REDACTED / CLEARED FOR PUBLIC RELEASE

███████



IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 1:04cr385 |
| | ) |
| | ) Hon. Leonie M. Brinkema |
| ALI AL-TIMIMI, | ) |
| | ) |
| Defendant | ) |

## GOVERNMENT'S MEMORANDUM OF LAW REGARDING EVIDENCE OBTAINED PURSUANT TO THE FOREIGN INTELLIGENCE SURVEILLANCE ACT (U)

On July 13, 2005, Ali Al-Timimi was sentenced to life in prison upon his conviction for soliciting treason as well as for counseling and inducing others to conspire to levy war against the United States, aid the Taliban, aid Lashkar-e-Taiba, and to use firearms and explosives in furtherance of those underlying crimes of violence. The next day he appealed his convictions to the United States Court of Appeals for the Fourth Circuit. (U)

On February 16, 2006, Al-Timimi moved to vacate his appeal so that his case could be remanded to this Court for consideration of his allegation that the government failed to provided

███████

#172

REDACTED / CLEARED FOR PUBLIC RELEASE

███████

pre-trial discovery to which he was entitled.[1]   On April 25, 2006, the Fourth Circuit vacated the appeal and remanded the case for this Court to consider issues raised by Al-Timimi and order whatever relief or changes in the case, if any, that it considers appropriate.(U)

This matter, therefore, comes before this Court on a very narrow issue--specifically, whether this defendant had been intercepted by the National Security Agency's ("NSA") Terrorist Surveillance Program ("TSP"). At a hearing on July 21, 2006, the defense raised a separate, yet related issue: that is, that the Orders issued by the U.S. Foreign Intelligence Surveillance Court ("FISC") pursuant to the Foreign Intelligence Surveillance Act of 1978 ("FISA") underlying certain evidence introduced in this case at trial may have been predicated on information captured by the TSP. On July 21, 2006, the Court ordered that, within 45 days of the defendant's return to this district[2], the government "must file with the Court, *ex parte* and under seal, all documents used to support the FISA warrant referenced in this case."[3] (U)

Pursuant to FISA, the Government respectfully submits this Memorandum of Law[4] *in*

---

[1]The government did not oppose Al-Timimi's motion to vacate his appeal. In doing so, however, it expressly noted that it did not concede that any pre-trial discovery was improperly withheld. (U)

[2]The defendant was, in fact, returned to the district on August 7, 2006. Therefore, the due date for the instant response was September 21, 2006. That due date was subsequently extended to October 2, 2006. (U)

[3]Al-Timimi was the target of FISC-authorized electronic surveillance ███████

███████

[4]This Memorandum of Law filed *in camera, ex parte* also includes six items: Item One is the Declaration and Claim of Privilege of the Attorney General. That particular document is unclassified,



Case 1:04-cr-00385-LMB   Document 301   Filed 09/19/14   Page 3 of 18 PageID# 1377

REDACTED / CLEARED FOR PUBLIC RELEASE

*camera, ex parte* and under seal. See 50 U.S.C.§ 1806(f). The Government respectfully submits

that after this Court conducts an *in camera, ex parte* review of the applications, orders, and other

materials related to the FISC-authorized electronic surveillance at issue (hereinafter collectively

referred to as the "FISA materials"), it will conclude that none of the very speculative claims

raised by the defense at the hearing on July 21, 2006 in regard to such electronic surveillance

have any merit. Thus, the Government submits that disclosure of the FISA materials to the

defense is not "necessary to make an accurate determination" of the issues in this case, as the

Court is eminently capable of reviewing the material in order to conduct its *in camera, ex parte*

review. Accordingly the defense is not entitled to see any of this information. 50 U.S.C. §

1806(f). (U)

## I. **Argument (U)**

## A. **The Defense Is Not Entitled to Disclosure[5] of Any of the FISA Materials in this Case (U)**

### (1) **Disclosure Is Not Necessary For the Court to Make An Accurate**

---

and a copy of that document will be provided to defense counsel by facsimile. Item Two is the *in
camera, ex parte* Declaration of Joseph Billy, Jr. the Acting Assistant Director of the FBI. Item Three is
a Motion to Unseal and to Release Certified Copies of Certain Documents. Item Four is a Certification
and Order. Finally, Items Five and Six are Applications for Orders and Warrants in ███████████████

[5] At the hearing on July 21, 2006, the Court indicated that one possibility following the Court's
review of these FISA materials could be that they would be shown to cleared defense counsel.
(Transcript of Hearing at 19). The government respectfully notes that the fact that a defense counsel may
have a security clearance does not alter the fact that defense counsel does not have a "need to know" and
revealing this information would harm the national security of the United States. See discussion infra
(U)



3



### Determination As to The Legality of the Surveillance (U)

A court's review of FISA materials is carefully circumscribed by statute. In the instant case, the Court has ordered *in camera, ex parte* review. The Court's order is consistent with the requirements of FISA. The Attorney General has filed a declaration[6] under oath stating that disclosure of, or an adversary hearing with respect to, this material would harm the national security of the United States. In addition, disclosure of this material to the defense, is not necessary for this Court's adjudication of these issues. A review of FISA materials is governed by 50 U.S.C. § 1806(f) which states in pertinent part:

> (f) In camera and ex parte review by district court.
>
> Whenever a court or other authority is notified pursuant to subsection (c) or (d) of this section, or whenever a motion is made pursuant to subsection (e) of this section, or whenever any motion or request is made by an aggrieved person pursuant to any other statute or rule of the United States or any State before any court or other authority of the United States or any State to discover or obtain applications or orders or other materials relating to electronic surveillance or to discover, obtain, or suppress evidence or information obtained or derived from electronic surveillance under this chapter, the United States district court or, where the motion is made before another authority, the United States district court in the same district as the authority, **shall, notwithstanding any other law, if the Attorney General files an affidavit under oath that disclosure or an adversary hearing would harm the national security of the United States, review in camera and ex parte the application, order, and such other materials relating to the surveillance as may be necessary to determine whether the surveillance of the aggrieved person was lawfully authorized** and conducted. In making this determination, the

---

[6]Pursuant to 28 U.S.C. § 1746, whenever an affidavit is required, a declaration with "like force and effect" may also be filed. In this instance, the Attorney General has filed a sworn declaration under oath. (U)



4

███████

> court may disclose to the aggrieved person, under appropriate security procedures and protective orders, portions of the application, order, or other materials relating to the surveillance **only where such disclosure is necessary to make an accurate determination of the legality of the surveillance.** [Emphasis Added] (U)

Accordingly, as this Court properly ordered at the hearing on July 21, 2006, and in its subsequent Order, the FISA materials are being provided solely to the Court for its *in camera* and *ex parte* review. See 50 U.S.C. § 1806(f). The government respectfully submits that an *in camera, ex parte* review of the FISA materials will enable the Court to determine the sources for the information that was used in support of the FISA applications in this case. Thus, the Government respectfully submits that the Court is quite capable of reaching an accurate determination with respect to the NSA issue without ordering the disclosure of the underlying FISA materials, as have other courts that have reviewed FISA-related issues. *See United States v. Squillacote*, 221 F.3d 542, 553-554 (4th Cir. 2000); *United States v. Johnson*, 952 F.2d 565, 571-572 (1st Cir. 1991); *United States v. Isa*, 923 F.2d 1300, 1306 (8th Cir. 1991); *United States v. Ott*, 827 F.2d 473, 475 (9th Cir. 1987); *United States v. Badia*, 827 F.2d 1458, 1463 (11th Cir. 1987); *United States v. Duggan*, 743 F.2d 59, 78 (2d Cir. 1984*); Belfield*, 692 F.2d at 141; *see also United States v. Nicholson*, 955 F.Supp. 588, 592 & n. 11 (E.D. Va. 1997)("this court knows of no instance in which a court has required an adversary hearing or disclosure in determining the legality of a FISA surveillance") (collecting cases); *United States v Rahman*, 861 F.Supp. 247, 250-251 (S.D.N.Y. 1994) (no disclosure necessary to "make an accurate determination of whether the surveillance at issue was lawfully authorized and conducted"), *aff'd* 189 F.3d 88 (2d

███████

5



Cir. 1999); *United States v. Thomson*, 752 F.Supp. 75, 79 (W.D.N.Y. 1990)(accord). (U)

### (2) Neither FISA Nor the Constitution Require Disclosure (U)

The Congressionally-mandated procedures of FISA govern the circumstances under which the disclosure of FISA materials may take place. 50 U.S.C. § 1806(f)(the FISA procedures are applicable "notwithstanding any other law"); *see* H.R. Rep. No. 95-1283, 95th Cong. 2d Sess., pt. I, at 91 (the *in camera, ex parte* procedures set forth in section 1806 "must be used."); *United States v. Belfield*, 692 F.2d 141, 146 (D.C. Cir. 1982) (the "carefully drawn procedures" in FISA are not to be "bypassed by the inventive litigant using a new statute, rule, or judicial construction"). (U)

No United States District Court or Court of Appeals has ever ordered the disclosure of FISA materials. Disclosure would be the "exception" and should only occur "when necessary." *Belfield*, 692 F.2d at 149 (emphasis in original). Critically, "[i]n enacting FISA, Congress intended to restrict, as much as constitutionally possible, discovery of FISA materials." *United States v. Spanjol*, 720 F.Supp. 55, 59 (E.D. Pa. 1989). This principle of non-disclosure applies even in cases where the defense attorney has been granted appropriate clearances by the government. Stated another way, the fact that a defense attorney may have a security clearance does not, in and of itself, entitle the attorney to see this information. FISA prohibits the disclosure of FISA materials to cleared counsel unless such disclosure is necessary, as described above. FISA's necessity requirement is consistent with the requirement that an individual is not entitled to classified information unless he or she has **both** an appropriate security clearance and



6



a "need to know." See, Executive Order 13292 Sec.6.1(z); *United States v. Ott*, 827 F.2d 473, 475 (9th Cir. 1987); *United States v. Bin Laden*, 126 F.Supp.2d 264, 287 (SDNY 2000). As discussed herein, defense counsel has no need to know the information contained in the FISA materials because his knowledge of such information is not necessary to an accurate adjudication by the Court of the issues that have been raised.  (U)

There is also no due process rationale which would entitle the defense to see any of the information which has been provided to the Court *in camera, ex parte.*   Every federal court that has considered a due process argument in this context has found that the *in camera, ex parte* procedures set forth in FISA do not violate a defendant's constitutional rights. *See, e.g., United States v. Damrah*, 412 F.3d 618, 624 (6th Cir. 2005)( *in camera, ex parte* review is not a violation of due process)  *Ott*, 827 F.2d at 476-477; *United States v. Belfield*, 692 F.2d at 148-149 (*in camera, ex parte* review is consistent with Congressional intent and Fifth and Sixth Amendments); *see also Nicholson*, 955 F. Supp. at 592. (U)

Congress was fully cognizant of the competing national security interest of the Executive Branch in maintaining the secrecy of the surveillance procedures used in foreign intelligence investigations on the one hand, and the interests of "aggrieved persons" in litigating claims of infringement upon their rights.  As the Second Circuit explained:

> Congress recognized the need for the Executive to engage in and employ the fruits of clandestine surveillance without being constantly hamstrung by disclosure requirements.  The statute is meant to "reconcile national intelligence and counterintelligence needs with constitutional principles in a way that is consistent with both national security and individual rights."  In FISA the privacy rights of individuals are ensured not through mandatory disclosure, but through its



7

REDACTED / CLEARED FOR PUBLIC RELEASE



> provisions for in-depth oversight of FISA surveillance by all three branches of
> government and by a statutory scheme that to a large degree centers on an
> expanded conception of minimization that differs from that which governs law-
> enforcement surveillance.

*Belfield*, 692 F.2d at 148 (footnotes omitted) (*citing* S. Rep. No. 95-701, 95th Cong., 2d Sess. at

16 (1978)(hereinafter "Senate Intelligence Report"), *reprinted in* 1978 U.S. Code Cong. &

Admin. News 3904); *see also ACLU Foundation of So. Cal. v. Barr*, 952 F.2d 457, 465 (D.C.

Cir. 1992) (construing *Belfield* as precedent for the proposition that section 1806(f) "is an

acceptable means of adjudicating the constitutional rights of persons who have been subjected to

FISA surveillance"); *United States v. Ott*, 827 F.2d 473, 477 (9th Cir. 1987) (noting "that

Congress has a legitimate interest in authorizing the Attorney General to invoke procedures

designed to ensure that sensitive security information is not unnecessarily disseminated to anyone

not involved in the surveillance operation in question"). (U)

Congress and the federal courts have repeatedly said that FISA strikes a "reasonable"

balance, *see* Senate Intelligence Report at 64, and that disclosure of FISA materials is not

justified simply because defense counsel may have difficulty litigating claims. The D.C. Circuit

emphasized in *Belfield,* that:

> We appreciate the difficulties of appellant's counsel in this case. They must argue
> that the determination of legality is so complex that an adversary hearing with full
> access to relevant materials is necessary. But without access to the relevant
> materials their claim of complexity can be given no concreteness. It is pure
> assertion.
>
> Congress was also aware of these difficulties. But it chose to resolve them through
> means other than mandatory disclosure. In FISA Congress has made a thoroughly



REDACTED / CLEARED FOR PUBLIC RELEASE



reasonable attempt to balance the competing concerns of individual privacy and foreign intelligence. . . . Appellants are understandably reluctant to be excluded from the process whereby the legality of a surveillance by which they were incidentally affected is judged. But it cannot be said that this exclusion rises to the level of a constitutional violation.

*Belfield*, 692 F.2d at 148. (U)

### (3) Disclosure Or An Adversary Hearing Would Harm the National Security (U)

In the instant case, the Attorney General has filed a declaration supported by a classified Declaration of the Acting Assistant Director, Counterterrorism Division, FBI, which amply and specifically demonstrates the risk to the national security that would occur if the FISA materials were ordered disclosed in this case. The underlying rationale for nondisclosure is evident. "In the sensitive area of foreign intelligence gathering, the need for extreme caution and sometimes even secrecy may not be overemphasized." *United States* v. *Ott*, 637 F. Supp. 62, 65 (E.D. Cal. 1986), *aff'd*, 827 F.2d 473 (9th Cir. 1987). (S)

Indeed, confidentiality is critical to the national security for a number of reasons that have been recognized by the federal courts. First, "[i]f potentially valuable intelligence sources" believe that the United States will be "unable to maintain the confidentiality of its relationship to them," then those sources "could well refuse to supply information." *CIA v. Sims*, 471 U.S. 159, 174 (1985). Thus:

> [e]ven a small chance that some court will order disclosure of a source's identity could well impair intelligence gathering and cause sources to "close up like a clam." To induce some sources to cooperate, the Government must tender as absolute an assurance of confidentiality as it possibly can. "The continued availability of [intelligence] sources depends upon the [Government's] ability to guarantee the security of information that might compromise them and even endanger [their] personal safety."



9

██████████

*Id.* (U)

The potential harm to national security also reaches beyond the concern that confidential human sources could be identified. A disclosure order relating to other highly sensitive and classified sources could chill the willingness of such other sources to share information with the United States in the future. *See Phillippi v. CIA*, 655 F.2d 1325, 1332-33 (D.C. Cir. 1981) ("In the world of international diplomacy, where face-saving may often be as important as substance, official confirmation . . . could have an adverse effect on our relations [with other countries]"). In addition, as one appellate court has stated, confirming that a foreign country has shared information with the United States could cause political unrest within that country and can lead to retaliatory measures. *See Afshar v. Department of State*, 702 F.2d 1125, 1130-31 (D.C. Cir. 1983) ("most governments do not officially acknowledge the existence of their intelligence services" and acknowledgment can cause "some official action in retaliation"). (U)

Thus, when a question is raised as to whether the disclosure of classified information, sources, methods or techniques would harm the national security, the federal courts have expressed a great reluctance to replace the considered judgment of Executive Branch officials charged with the responsibility of determining whether foreign agents, spies and terrorists are capable of piecing together a mosaic of information which, when revealed, could reasonably be expected to harm the national security of the United States. *See United States v. Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989) ("Things that did not make sense to the District Judge would make all too much sense to a foreign counter-intelligence specialist who could learn much about this

██████████

CLASSIFIED — SUBJECT TO PUBLIC RELEASE

███

nation's intelligence-gathering capabilities from what these documents revealed about sources and methods.") (U)

Indeed, as the Supreme Court recognized in one case, the:

decisions of the Director [of the CIA], who must of course be familiar with "the whole picture," as judges are not, are worthy of great deference given the magnitude of the national security interests at stake. ... [I]t is the responsibility of the Director of Central Intelligence, not that of the judiciary, to weigh the variety of subtle and complex factors in determining whether the disclosure of information may lead to an unacceptable risk of compromising the Agency's intelligence-gathering process.

*CIA v. Sims*, 471 U.S. at 179-180; *see Halperin v. CIA*, 629 F.2d 144, 150 (D.C. Cir. 1980) ("[E]ach individual piece of intelligence information, much like a piece of a jigsaw puzzle, may aid in piecing together other bits of information even when the individual piece is not of obvious importance in itself."). (U)

## B.    The FISA Surveillance in This Case (S)

As noted above, defendant speculates, without any basis in fact, that the communications intercepted pursuant to the orders issued by the FISC[7] were based upon information illegally collected by the NSA.   Defendant's claims are without merit and should be denied. (S)

---

[7] As the Court will see in the applications and orders from the FISC, the surveillance targeting this defendant ███████████████████████████████████████ In the trial of this defendant, however, only a small number of intercepted electronic communications were introduced by the government against Al-Timimi. ███
███████████████████████████████████████

███
11



An *in camera, ex parte* review of the FISA materials at issue in this case demonstrate that the facts supporting the FISC's finding of probable cause to believe that Ali Al-Timimi was an agent of a foreign power did not include information from the NSA's TSP.  As the Court will see

12

At the hearing on July 21, 2006, the defense speculated without any basis in fact,

that the FISA materials *could* be tainted by information from the NSA in the form of "sources"

who may have been privy to NSA information.

13

REDACTED / CLEARED FOR PUBLIC RELEASE

14

REDACTED / CLEARED FOR PUBLIC RELEASE

REDACTED / CLEARED FOR PUBLIC RELEASE

15

REDACTED / CLEARED FOR PUBLIC RELEASE

### III. Conclusion (U)

Based upon the foregoing and a review of the materials submitted *in camera, ex parte*, the Government respectfully submits that this Court should find that those materials do not contain information from the NSA's Terrorist Surveillance Program.  The Government respectfully submits that the Court is able to make an accurate determination about those materials without the need to disclose the FISA materials, or portions thereof, to the defendant, through the *in camera, ex parte* review which this Court properly ordered.  Because the law is clear that disclosure may "only" occur when "necessary to make an accurate determination" or when "due process requires discovery or disclosure," 50 U.S.C. § 1806(f)-(g), none of this information should be disclosed to the defense.[12]  (U)

---

[12] It is important to note that Al-Timimi did not challenge the FISA evidence admitted "against" him on any ground before trial.  Pursuant to F.R.Cr.P. 12(b)(3)(C), motions to suppress must be raised before trial.  Before trial, Al-Timimi received notice that the United States intended to use information collected pursuant to FISA, *see* 50 U.S.C. 1806(c), but he did not challenge that information.  Ultimately the government introduced a total of five communications obtained through FISA against the defendant at trial.  While the defendant did move to exclude the fruits of the surveillance on relevance grounds, he did not also move to exclude or suppress the FISA evidence for any other reason.  Because he did not move to suppress or exclude the FISA evidence before trial or at trial, his right to do so after his conviction may have been forfeited or waived.  *See United States v. Ruhe*, 191 F.3d 376, 386 (4th Cir. 1999).  *Compare* F.R.Cr.P. 12(e) ("A party waives any Rule 12(b)(3) defense, objection or request not raised by the deadline" unless for "good cause" the court grants "relief from the waiver") *with* 50 U.S.C. 1806(e) (motions to suppress on the ground that the "information was unlawfully acquired" must be made before trial unless "there was no opportunity to make such a motion or the person was not aware of the grounds of the motion").  Aside from the forfeiture or waiver question, however, Al-Timimi should be estopped from challenging the evidence obtained through the FISA because he made ***affirmative use*** of that very evidence at trial.  Al-Timimi was allowed to introduce evidence, through a joint stipulation, that a large number of his telephone calls and email messages were intercepted by the government.  The defense strategy was intended to allow Al-Timimi to argue that, despite extensive electronic surveillance,

REDACTED / CLEARED FOR PUBLIC RELEASE

███████

A district court order requiring the disclosure of FISA materials is a final order for purposes of appeal. *See* 50 U.S.C. § 1806(h). Because of the significant national security consequences that would attend such an order, the Government expects that it would seek to appeal. Accordingly, in the unlikely event that the Court were inclined to rule that the defense was entitled to see this information, the Government respectfully requests that the Court indicate its intent before issuing such an order, or alternatively, that the Court's order be issued in a manner that provides the Government with sufficient notice to file an appeal before the actual disclosure. (U)

Respectfully submitted,

Chuck Rosenberg
United States Attorney

By: _____
    Gordon D. Kromberg
    Assistant U.S. Attorney

John T. Gibbs
DOJ Trial Attorney
National Security Division

---

the government did not identify any conversations in which he solicited or counseled criminal activity. Because Al-Timimi introduced FISA evidence, including the fact that thousands of his calls and email messages were intercepted, and thereby sought to gain a tactical advantage from the use of the FISA information, he should be estopped from now arguing that the government allegedly violated his rights as a result of the FISA collection. *See, e.g., United States v. Calderon*, 348 U.S. 160, 164 n. 1 (1954) (proof introduced by the defendant "may lay the foundation for otherwise inadmissible evidence in the Government's initial presentation"). (U)

███████

17

Dated: October 2, 2006

18