Case 1:04-cr-00385-LMB   Document 382   Filed 09/19/14   Page 1 of 12 PageID# 1393

2̃8̃0

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division



| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Crim. No. 1:04-CR-385 |
| | ) | |
| v. | ) | The Hon. Leonie M. Brinkema |
| | ) | |
| ALI AL-TIMIMI | ) | |

### GOVERNMENT'S SUPPLEMENTAL REPORT REGARDING THE SEARCH FOR FIVE CATEGORIES OF DISCOVERABLE MATERIALS (U)

(U)  The United States submits this supplemental report regarding its search for five categories of discoverable materials identified by Timimi.  The search has been concluded.  In short, our findings are still the same: Timimi received in discovery pre-trial everything to which he was entitled.  In the course of the search, the government did not locate any information that was not provided to Timimi pre-trial but to which he was entitled to discover.

#### Procedural Background

A.    Pre-Trial

(U)  On January 21, 2005, in the course of pre-trial proceedings, Timimi moved the Court to compel the Government to produce for discovery recordings of his conversations with Safar Al-Hawali in Saudi Arabia in the time between September 11, 2001 and January of 2003, as intercepted by the Federal Bureau of Investigation ("FBI") or the National Security Agency ("NSA").  In response, on February 16, 2005, the Government filed the "Government's *Ex Parte in Camera* Status Report Regarding Al-Timimi's Renewed Motion to Compel Discovery."  Thereafter, on March 21, 2005, the Government filed the "Government's *Ex Parte in Camera*



**REDACTED / CLEARED FOR PUBLIC RELEASE**

Reply to Defendant Ali Al-Timimi's Renewed Motion to Compel Discovery and Motion for Protective Order Under CIPA Section 4" ("March 21, 2005 *Ex Parte* Reply")

(U) In essence, those filings, authored by Mr. Gibbs, represented that the government diligently searched through NSA records and that Timimi was provided with all of the discovery to which he was entitled. In light of the March 21, 2005 *Ex Parte* Reply, and pursuant to the Government's request, the Court denied the defendant's motion to compel as moot.

(U) Following a trial in early April, 2005, the defendant was convicted. On July 13, 2005, he was sentenced to life in prison, and the next day appealed.

B.     Post-Trial

(U) At the end of 2005, media reports disclosed the existence of the NSA's Terrorist Surveillance Program ("TSP"). On February 16, 2006, Timimi moved to vacate his appeal so that his case could be remanded to this Court for consideration of his allegation that the government failed to provide pre-trial discovery to which he was entitled. Specifically, the defendant alleged that the Government failed to disclose recordings of his telephone conversations with Hawali that had been captured by the NSA pursuant to the TSP.[1] In April 2006, the Fourth Circuit vacated Timimi's appeal and remanded the case to this Court for this Court to consider issues raised by Timimi and order whatever relief or changes in the case, if any, it thought appropriate.

(U) After the case was remanded, Timimi moved for discovery of undisclosed intercepts. By order of July 21, 2006 ("the July 21st Order), this Court gave Timimi 45 days to serve the government with his discovery request specifying the particular individuals for whom

---

[1] The government did not oppose Timimi's motion to vacate his appeal. In doing so, however, it expressly noted that it did not concede that any pre-trial discovery was improperly withheld

2

**REDACTED / CLEARED FOR PUBLIC RELEASE**

REDACTED / CLEARED FOR PUBLIC RELEASE

government surveillance information was sought. Through that same order, the Court directed the government to provide the Court, *ex parte* and under seal, all documents used to support the FISA warrant that authorized the intercept of Timimi's communications.

(U) On July 31, 2006, in response to Timimi's post-remand discovery motions, Associate Deputy Attorney General ("ADAG") Patrick Rowan filed the Government's *Ex Parte, In Camera,* Classified Memorandum in Support of Government's Response to Defendant's Post-Remand Motions Concerning Surveillance by the National Security Agency ("the July 31, 2006 Memorandum"). Because of the classification level of the document, undersigned counsel was not then authorized to see it.

(U) By Order of September 22, 2006, the Court extended the time for Timimi and the government to comply with the July 21st Order by approximately six more weeks. Before Timimi served the government with his discovery request specifying the particular individuals for whom government surveillance information was sought in accordance with the July 21st Order, however, the attention of the parties was drawn to a letter to the Court from Timimi's former trial counsel, Mr. MacMahon.

(U) By letter of September 26, 2006, Mr. MacMahon notified the Court that, sometime in 2005, he had seen in the records of the 9/11 Commission a reference to surveillance of Timimi conducted prior to 9/11. After the Court arranged for the parties to see Mr. MacMahon's letter, Timimi moved for disclosure of the document in the records of the 9/11 Commission referenced by Mr. MacMahon, and for more time to serve discovery requests in accordance with the July 21st Order. In light of the government's search for the document referenced by Mr. MacMahon, this Court granted Timimi's motion for more time to serve discovery requests, and by Order of January 24, 2007, provided that the revised deadline for service of such discovery requests



3

REDACTED / CLEARED FOR PUBLIC RELEASE

Case 1:04-cr-00385-LMB Document 382 Filed 09/16/14 Page 4 of 12 PageID# 1396

would be set in a further order of the Court after disclosure issues relating to the Brockhaus letter were resolved. In that same Order, the Court ruled that the government's prior ex parte filings contained no information that was required to be produced in discovery, and would not be disclosed to the defense.

(U) In an attempt to locate the record referenced by Mr. McMahon, FBI Special Agents ("SA") Christopher Mamula, Sarah Linden, and Tracy Kneisler — all of whom served as case agents for prosecutions of individuals closely related to Timimi — spent hours in late 2006 and early 2007, examining records maintained by the National Archives. The results of that search were summarized for the Court in the Government's *Ex Parte* and Under Seal Classified Filing Regarding Documents from the NARA DMS Database, filed on February 16, 2007.

(U) On August 24, 2007, this Court denied Timimi's motions for access to ex parte filings and to the National Archives. Further, this Court gave Timimi three weeks to file and serve the government with the names of the particular individuals for whom government surveillance information was sought in accordance with the Court's Order of July 21, 2006.

(U) Pursuant to this Court's orders, on September 14, 2007, defense counsel provided the government with detailed discovery requests for extensive information about many individuals. Timimi sought disclosure of all communications intercepts involving the defendant and a number of individuals, as well communications intercepts of those individuals that referenced the defendant.

(U) On October 19, 2007, the United States filed an unclassified and unsealed Motion to Quash Defendant's Request for Discovery. In that motion to quash, the government argued that Timimi's requests were likely moot in light of ADAG Rowan's filing, and, in any event, over broad.



4

Case 1:04-cr-00385-LMB   Document 382   Filed 09/19/14   Page 5 of 12 PageID# 1397

(U) On or about October 30, 2007, ADAG Rowan (by now Deputy Assistant Attorney General, or "DAAG") filed a supplemental *ex parte* pleading that undersigned counsel was then not cleared to see. In essence, ADAG Rowan's new pleading summarized those parts of the July 31, 2006 Memorandum that were responsive to the discovery requests provided by Timimi on September 14, 2007.

(U) On November 23, 2007, the parties came before the Court on the government's motion to quash Timimi's request for discovery. In essence, the government argued that the defendant's discovery requests were too broad, and that, based on the representations contained in the *ex parte, in camera,* classified pleadings filed by DAAG Rowan, at least some of the defendant's discovery requests were moot.

(U) At the hearing on November 23, 2007, this Court issued an Order providing that it would not consider the government's motion absent a representation by a member of the United States Attorney's Office regarding the search for discoverable records.

(U) Subsequently, undersigned counsel was cleared to review materials obtained by the NSA including materials, if any, pursuant to the TSP as publicly described by the President. As described on Page 2 of the Government's *Ex Parte, In Camera,* Classified Status Report Regarding NSA Materials" filed on March 5, 2008 (hereinafter the "March 5th Status Report"), undersigned counsel spent about 20 hours at NSA between December 2007 and April 2008, searching for discoverable materials from various NSA databases and questioning NSA officials, with the assistance of SA John Wyman.

(U) On May 14, 2008, the United States filed an unclassified pleading stating that the search had been concluded. Further, it explained that, for the reasons detailed in a classified pleading filed that same day *ex parte* and *in camera* (captioned "Government's *ex Parte, in*



5

*Camera.* Classified Status Report Regarding Completion of Search for Discoverable Materials at NSA" - - hereinafter the "May 14ᵗʰ *Ex Parte* Report"), our findings were that Timimi received in discovery pre-trial everything to which he was entitled.

(U) On May 27, 2008, the United States filed and provided to defense counsel through the court security officer a revised version of the classified pleading initially filed *ex parte* and *in camera* on May 14, 2008. In that pleading, the United States reported that its search was concluded, and the findings were still the same: Timimi received in discovery pre-trial everything to which he was entitled.

(U) On October 23, 2008, the parties again came before the Court. At the hearing, the Court noted that it had seen nothing in the government's pleadings that indicated the existence of any Rule 16 violation by the prosecutors or the existence of new discovery that had been withheld from Timimi but that would have assisted his defense in any way. Transcript at pp. 9 and 14. At the hearing, the Court directed the government to respond to five specific discovery requests from Timimi, and to do so after searching the records of the FBI, CIA, NSA, and the Department of Defense. *Id.* at 23-24.

(U) The five specific discovery requests from Timimi were requests for records of the intercepts of the following telephone calls:

    1.    Telephone call between Timimi and Aoid Ali Shir on September 13, 2001, at 5:47 p.m.

    2.    Telephone call between Timimi and Hawali, on September 19, 2001, at 10:57 a.m.

    3.    Telephone call between Royer and LEF, sometime between September 17 and September 20, 2001.

    4.    Telephone call between Hasan and Jaafar Idis, sometime between September 17 and September 20, 2001; and



6

2.     [illegible] telephone calls between Timimi and [illegible] between September [illegible]
and January 2002, when Timimi was in Saudi Arabia and Timimi [illegible]
Pakistan.

[illegible] The search for information responsive to these categories of items [illegible] upon [illegible]

undersigned counsel did not locate any information that the [illegible defendant] is [illegible entitled to under] [illegible]

[illegible circumstances]  A more detailed explanation follows.

## Findings

1.     Telephone call between Timimi and [illegible]
_on September 13, 2001, at 5:47 p.m._ [illegible]

[REDACTED] Timimi sought intercepts of a telephone call between Timimi and Adil Tahir on

September 13, 2001, at 5:47 p.m. According to toll records collected by the FBI, there was a

nine-minute call between the numbers of Timimi and Tahir on that date.

Paragraph 2 on the bottom of Page [illegible] of the March 2th

Status Report provides additional information regarding the [illegible] of the search for discovery

information at NSA.

[illegible]

[7] (1) In his pleadings of October 2008 identifying the the Tahir call, Timimi states that the call "was the subject of the Tahir affidavit that offered highly exculpatory information." Timimi pleading at p. 10. For the convenience of the Court, we attach to this pleading a copy of that affidavit, which was among the materials Timimi provided to the government before he was indicted in an attempt to dissuade it from seeking an indictment. In our view, the affidavit is not exculpatory, for it never was asserted that, immediately after 9/11, Timimi advised everyone with whom he spoke to go to Afghanistan to fight against American troops or otherwise [illegible] serve there -- and Tahir simply appears to be another person that he did not induce to go fight. We suspect that the inconsequential nature of Tahir's information was the reason that Timimi chose not to call him to testify at trial.

REDACTED / CLEARED FOR PUBLIC RELEASE



(U)    2.    Telephone call between Timimi and Hawali.
            On September 19, 2001, at 10:57 a.m.

Timimi sought intercepts of a telephone call between Timimi and Hawali on

September 19, 2001, at 10:57 a.m.

Paragraph 2 on the bottom of Page 2 of the March 5th Status Report provides additional

information regarding the scope of the search for discoverable information at NSA.

(U)    3.    Telephone call between Royer and LET, sometime
            Between September 17 and September 20, 2001

Timimi sought intercepts of a telephone call between Royer and LET sometime

between September 17 and September 20, 2001.

                                                                        As

noted above, Paragraph 2 on the bottom of Page 2 of the March 5th Status Report provides

additional information regarding the scope of the search for discoverable information at NSA.

(U)    4.    Telephone call between Hasan and Jaafar Idris,
            Sometime between September 17 and September 20, 2001

Timimi sought intercepts of a telephone call between Hasan and Jaafar Idris,

sometime between September 17 and September 20, 2001.



8

REDACTED / CLEARED FOR PUBLIC RELEASE

Case 1:04-cr-00385-LMB   Document 382   Filed 09/19/14   Page 9 of 12 PageID# 1401



ƒ

Again, Paragraph 2 on the bottom of Page 2 of the March 5th

Status Report provides additional information regarding the scope of the search for discoverable information at NSA.

    (U)   5.    Telephone calls between Timimi and Chandia between
                  December 2001 and January 2002, when Timimi was in
                  <u>Saudi Arabia and Chandia was in Pakistan</u>

(U)  Timimi sought intercepts of telephone calls between Timimi and Chandia between

December 2001 and January 2002, when Timimi was in Saudi Arabia and Chandia was in

Pakistan.  According to Timimi's counsel, Timimi placed a call to Chandia from a phone kiosk

in Riyadh, Saudi Arabia, but does not know either the telephone number of the phone he used or

Chandia's number in Pakistan.  To ascertain the telephone number that Chandia used in Pakistan

Timimi's counsel suggested that the government contact Chandia's counsel.  Mr. Gibbs

requested that information from (Marvin Miller), but did not receive any responsive information.

. Additional information regarding the scope of the

search for discoverable information at NSA is contained in Paragraphs 5 through 10 of the

March 5th Status Report; (b) the last paragraph on Page 3 of the  May 14th *Ex Parte* Report; and

(c) Pages 5 (from the last paragraph) through 8 of the May 14th *Ex Parte* Report.

Finally, we note that, by motion of December 16, 2008, Timimi moved

for disclosure of warrantless electronic surveillance "to facilitate an adversarial proceeding on



9

Case 1:04-cr-00385-LMB   Document 382   Filed 09/19/14   Page 10 of 12 PageID# 1402

the issue of whether any fruits of this illegal surveillance was used by the government in any

Timimi's Memorandum in Support of Motion for Disclosure of Evidence Derived From

Warrantless Surveillance, at p. 1. Notwithstanding the fact that the NSA TSP program was

lawful, acceptance of Timimi's argument would circumvent the balance that Congress set in

the Classified Information Procedures Act between the needs of national security and the

discovery rights of criminal defendants. In any event, his

Finally, for the

reasons stated in the last sentence in the third paragraph of Page 5 of the May 19th *Ex Parte*

Report filed earlier this year, the reasons detailed in the July 31, 2006 Memorandum are still

valid.

## Conclusion

(U) In sum, the government has completed its search for discoverable information. No

exculpatory information was found. Accordingly, the Court should deny Timimi's discovery

motions.

Respectfully submitted

Dana Boente
Acting United States Attorney

Gordon D. Kromberg
Assistant United States Attorney

10

# UNCLASSIFIED

### AFFIDAVIT OF ADEL TAHIR

1. My name is Adel Tahir and I reside at 9923 Oak Creek Place, Oakton, VA, 22124. I am over 18 years of age.

2. In approximately the summer of 2001 I approached Mr. Ali Al-Timimi and asked for his views on a book that I planned to read, authored by Ayman Al-Zawahiri.

3. Al-Zawahiri is second in charge of Al Qaeda.

4. At the time that I asked Mr. Al-Timimi about his views on the book, I did not know who Al-Zawahiri was and did not know what Al Qaeda was.

5. Mr. Al-Timimi urged me not to read the book because he said that Al-Zawahiri was an extremist.

6. Another time, shortly after September 11, 2001, I approached Mr. Al-Timimi and asked him if it would be acceptable for me to shave my beard because I was scared that I might be subject to random acts of violence if I looked "too Muslim."

7. Mr. Al-Timimi responded that whether or not I shaved my beard, I would still be identified as a Muslim.

8. Given my fear of random acts of violence against me, I asked Mr. Al-Timimi what I should do as a young Muslim.

9. Mr. Al-Timimi responded that there were three options that I should consider: 1) Pray and increase in worship voluntary worship; 2) Avoid public places, and if I did go to public places I should try to not dress in traditional Muslim garb; and 3) If I ever had contemplated living abroad in a Muslim country, now would be the perfect time to do so.

10. In his three part advice, Mr. Al-Timimi never advised me to live abroad in order to engage in violent Jihad.

_____
Adel Tahir

Aug. 11, 2003
Date

# UNCLASSIFIED

REDACTED / CLEARED FOR PUBLIC RELEASE

(U) CERTIFICATE OF SERVICE

(U) I certify that the Original and Duplicate Originals of the [unreadable]
DOCUMENTS SUPPLEMENTAL REPLY BASED ON THE ILLUSTRATIVE
CATEGORIES OF DISCOVERABLE MATERIALS ORIGINALS will be delivered to the
Court Security Officer, so that it can be provided to opposing defense counsel.



REDACTED / CLEARED FOR PUBLIC RELEASE