IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Alexandria Division*

| | |
|---|---|
| UNITED STATES OF AMERICA )<br> )<br>v. )<br> )    CRIMINAL NO. 1:04-cr-385<br>ALI AL-TIMIMI, )<br> )<br>Defendant. ) | |

**Government's Motion for a Stay of the Court's Bail Order Pending Appeal**

On August 18, 2020, the Court granted the defendant's emergency motion for bail pending appeal. (ECF Nos. 518–20.) The Court also ordered the Bureau of Prisons to release the defendant following a 14-day quarantine period subject to conditions.

The government understands that the Bureau of Prisons plans to release the defendant on September 1, 2020, after the 14-day quarantine period expires. In the meantime, the government has noticed an appeal of the Court's bail order (ECF No. 521), which the Fourth Circuit has opened as case no. 20-4441. The Fourth Circuit has also entered a memorandum briefing order under which the government's opening brief is due September 1, 2020, and the defendant's response brief is due September 8, 2020. (No. 20-4441, ECF No. 3.)

By statute and rule, bail appeals must be determined "promptly." *See* 18 U.S.C. § 3145(c); *accord* Fed. R. App. P. 9(a)(2). Accordingly, the parties will soon have a definitive answer on whether the Court's bail order will remain in effect pending resolution of the defendant's direct appeal. In the short period before the bail issue is "promptly" resolved at the Fourth Circuit, the government respectfully requests that the Court stay its bail order.[1]

---

[1] The government has consulted with defense counsel, who oppose the stay motion.

## Argument

In *Hilton v. Braunskill*, 481 U.S. 770 (1987), the Supreme Court outlined four factors that govern a court's consideration of whether to grant a stay pending a prisoner's release from custody. These include:

1. Whether the stay applicant has made a strong showing that he is likely to succeed on the merits;

2. Whether the applicant will be irreparably injured absent a stay;

3. Whether issuance of the stay will substantially injure the other parties interested in the proceeding; and

4. Where the public interest lies.

*Id*. at 776 (punctuation modified). At least one appellate court has agreed that these traditional stay factors apply in the context of bail litigation. *See Beverly v. United States*, 468 F.2d 732, 741 n.13 (5th Cir. 1972). As explained below, the balance of these factors weigh in favor of a stay.

### A. Factor 1: Likelihood of Success on the Merits

In *Hilton*, the Supreme Court explained that if the government "establishes that it has a strong likelihood of success on appeal, or where, failing that, it can nonetheless demonstrate a substantial case on the merits, continued custody is permissible if the second and fourth factors in the traditional stay analysis militate against release." 481 U.S. at 778. Here, the government satisfies these standards. That is, the government has a strong likelihood of success on appeal and, alternatively, it (i) has a substantial case on the merits, (ii) will be irreparably injured absent a stay, and (iii) the public interest counsels in favor of a stay. *See infra* Part C (discussing the second and fourth stay factors).

The government recognizes that asking the Court to pass upon the likelihood of its

success on appeal "places [it] in the awkward position of second guessing its own work." *Newman v. Harrington*, 917 F. Supp. 2d 765, 791 (N.D. Ill. 2013). Even so, the government asserts that a stay pending appeal is appropriate.

### 1. The defendant has not met his burden to demonstrate by clear and convincing evidence he is not a danger.

When seeking bail pending appeal, "[t]he burden of establishing that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant." Fed. R. Crim. P. 46(c). Under 18 U.S.C. § 3143(b)(1)(A), the defendant must make such a showing by clear and convincing evidence. *See, e.g.*, *United States v. Abuhamra*, 389 F.3d 309, 319 (2d Cir. 2004) (explaining that the Bail Reform Act "establishes a presumption in favor of detention" post-verdict). The Fourth Circuit reviews a district court's dangerousness finding under the Bail Reform Act for clear error. *See United States v. Williams*, 753 F.2d 329, 333 (4th Cir. 1985).

For two key reasons, the government is likely to prevail on the dangerousness question.

*First*, the severity of the defendant's offenses militates against bail. As the Fourth Circuit recognized in *Williams*, "criminal records" may serve as compelling evidence of dangerousness. 753 F.3d at 335 (discussing prior drug-trafficking convictions as evidence of dangerousness where the defendant sought bail on narcotics charges); *see also United States v. Strong*, 775 F.2d 504, 507–08 (3d Cir. 1985) (holding that a drug-trafficking conviction was sufficient evidence of dangerousness to support detention pending appeal). Here, the evidence at trial demonstrated that the defendant sent his acolytes overseas to garner firearms and explosives training so that they could wage violent jihad against American soldiers in Afghanistan. Providing such support to America's enemies in a time of war is profoundly serious conduct. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 28–29 (noting congressional findings regarding the

3

"serious threat posed by international terrorism" and stating that "combating terrorism is an urgent objective of the highest order"); *In re Charge to Grand Jury*, 30 F. Cas. 1034, 1035 (S.D.N.Y. 1861) (noting that treason "is the highest crime known to society, and was deemed by the founders of our government of such importance … that they specially defined it in the constitution").

Indeed, because of the defendant's influence and position of authority, several of his disciples did precisely what he instructed (or sought to further his goals in other ways). *See United States v. Benkhala*, 530 F.3d 300 (4th Cir. 2008); *United States v. Abu Ali*, 528 F.3d 210 (4th Cir. 2008); *United States v. Chandia*, 514 F.3d 365 (4th Cir. 2008); *United States v. Khan*, 309 F. Supp. 2d 789 (E.D. Va. 2004). That kind of sway over others illustrates the danger inherent in the defendant's release. *Cf. United States v. Mullet*, No. 13-3205, 2013 WL 8367565, at *2 (6th Cir. July 24, 2013) (holding that the defendant could not show non-dangerousness where "[h]e [was] the leader and exercises control over the members of his community, as evidenced by the [criminal] actions of [his] fifteen other co-defendants").

In granting bail, the Court stated that the government's concerns about the defendant's offense conduct were "thoroughly unpersuasive." (ECF No. 519 at 6.) Instead, Court focused on the fact that the defendant complied with the conditions of his pretrial release and has a minimal disciplinary record. But this approach inverts the governing legal standard and misallocates the burden of proof. Time in prison—even time without serious disciplinary infractions—is not, standing alone, clear and convincing evidence of future non-dangerousness. *Cf. United States v. Dahda*, No. 20-3097, 2020 WL 4578381, at *3 (10th Cir. Aug. 10, 2020) (per curiam) (affirming district court's denial of bail on dangerousness grounds even where the defendant "served several years in prison with no significant disciplinary incidents").

Importantly, the record here contains zero evidence that Al-Timimi has accepted responsibility for his misconduct or has forsworn violent jihad as a permissible tactic. This is in stark contrast to at least one of Al-Timimi's followers, Daniel Royer, who has publicly renounced Islamic extremism and criticized Al-Timimi's "colossally bad advice." *See* Voice of America, Bosnia to Pakistan to Prison: Ex-Fighter Reflects on Life, Apr. 20, 2017, https://www.voanews.com/usa/bosnia-pakistan-prison-ex-fighter-reflects-life.

The Court also stated that the concerns expressed by the Second Circuit *Hassoun v. Searls*, — F.3d —, No. 20-2056-CV, 2020 WL 4355275 (2d Cir. July 30, 2020), regarding the danger inherent in releasing defendants ideologically committed to violent jihad, were beside the point, as the defendant was convicted of soliciting treason, not committing terrorism. (ECF No. 519 at 7 n.3.) But, for present purposes, that is a distinction without a difference. In the period after September 11, the connection between supporting the Taliban against American soldiers and the terroristic threat posed by violent jihad was manifest, and this defendant was convicted of attempting to provide support to the Taliban. *Cf. United States v. Hamidullin*, 888 F.3d 62, 78 (4th Cir. 2018) (Wilkinson, J., concurring) (noting that the Court's rejection of combatant immunity claims by a Taliban fighter was appropriate in light of the "worldwide scourge of terrorism"); *cf. United States v. Muhtorov*, 702 F. App'x 694, 702 (10th Cir. 2017) (vacating district court's grant of bail in light of the defendant's "alleged intent to further … terrorism and the concrete, affirmative steps that he took in manifesting his intent").

Accordingly, the defendant has not offered clear and convincing evidence to overcome the post-verdict presumption in favor of detention.

### 2. The defendant has not demonstrated that a substantial question of law exists as to his § 844(h) convictions.

The defendant also has not raised "a substantial question of law or fact" likely to result in

5

reversal, a new trial, or a non-imprisonment sentence. § 3143(b)(1)(B). Under Circuit precedent, a "substantial question of law" is a "close" question or "one that very well could be decided the other way." *United States v. Steinhorn*, 927 F.2d 195, 196 (4th Cir. 1991) (per curiam) (quoting *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985) (per curiam)). The defendant bears the burden of showing that his appeal involves a "substantial question." *See, e.g.*, *United States v. Zimny*, 857 F.3d 97, 100 (1st Cir. 2017); *accord United States v. Dietz*, No. 94–5733, 1995 WL 133353, at *4 (4th Cir. Mar. 28, 1995) (per curiam). Having discharged all of his sentences except those on his two convictions under 18 U.S.C. § 924(c) and his two convictions under § 844(h), the defendant asserts that his four remaining convictions are vulnerable on appeal because they rely on an invalid theory of aiding-and-abetting liability.

The defendant is wrong. The government previously accepted for argument's sake that the defendant's two § 924(c) convictions, which are responsible for his sentence of life imprisonment, raise substantial questions of law in light of *United States v. Davis*, 139 S. Ct. 2319 (2019). (ECF No. 473 at 9.) But the defendant's two additional convictions under § 844(h) subject him to an additional 30-year sentence that will not run until at least 2039.[2] Thus, in order to prevail, the defendant must demonstrate that a substantial question of law exists as to the validity of *those* two convictions. He has not done so.

On direct appeal, the Fourth Circuit could sustain the § 844(h) convictions on either a theory of co-conspirator liability or a simple aiding-and-abetting theory, and the defendant's aiding-and-abetting arguments are unavailing. This Court's jury instructions expressly required

---

[2] The defendant has been incarcerated since July 13, 2005. Even setting aside his two § 924(c) convictions, he has a total sentence of 481 months. (ECF No. 433-5.) Assuming the maximum of 15 percent off for good-time credit, that sentence would be active until approximately July 13, 2039.

6

the jury to conclude that the defendant understood, in advance, that others were going to carry explosives in furtherance of the federal felonies underlying the § 844(h) counts. The instructions were thus entirely compatible with *Rosemond v. United States*, 572 U.S. 65 (2014), and the Fourth Circuit's cases applying it. *See United States v. Oloyede*, 933 F.3d 302, 317 (4th Cir. 2019), *cert. denied sub nom. Popoola v. United States*, 140 S. Ct. 1212 (2020); *United States v. Garcia*, 752 F.3d 382, 389 n.6 (4th Cir. 2014).

The defendant's substantial-question argument is even weaker in its proper doctrinal context. Because *Rosemond* post-dated the jury charge in this case, and because the defendant did not object to the aiding-and-abetting instruction at trial, this Court would, at most, review any claim under *Rosemond* raised now for plain error. *See, e.g.*, *United States v. Hassan*, 742 F.3d 104, 128 n.18 (4th Cir. 2014) (suggesting that failure to comply with Federal Rule of Criminal Procedure 30(d) by not objecting to an instruction before the jury deliberates can result in outright waiver); *United States v. Ebersole*, 411 F.3d 517, 526 (4th Cir. 2005) (stating that a defendant's "failure to specifically object to [an] instruction during the trial would constrain us to review its substance for plain error only").

The defendant's challenge would fail on plain-error review, both because there was no *Rosemond* error in the instructions and because the defendant cannot show that any instructional error, even if plain, affected his substantial rights. *See, e.g.*, *United States v. Prado*, 815 F.3d 93, 105 (2d Cir. 2016) (a *Rosemond* error did not affect a defendant's substantial rights where the court could not "say that there [was] a reasonable probability of a different outcome at trial had the jury been properly instructed"); *United States v. Lawson*, 810 F.3d 1032, 1041–42 (7th Cir. 2016) (concluding that "[t]he theoretical possibility of a conviction" on erroneous *Rosemond* grounds did not merit *vacatur* where "it appear[ed] beyond a reasonable doubt that the error

complained of did not have any effect on the verdict").

The defendant's legal arguments on this point have been inapposite. He has repeatedly cited an unpublished Circuit opinion for the proposition that a conviction for aiding-and-abetting another's use of firearms requires that a defendant know to a "practical certainty" that weapons will be used during the contemplated offense. *United States v. Donel*, 211 F. App'x 180, 181 (4th Cir. 2006) (quoting *United States v. Spinney*, 65 F.3d 231, 237 (1st Cir. 1995)). But *Spinney* itself went on to explain "that a conviction can be grounded on something less than actual knowledge," such as evidence proving "that the defendant knew the salient details of the plot." 65 F.3d at 237. And here, the defendant understood—indeed, masterminded—the plot underlying this entire case: a scheme to send his acolytes abroad to LET training camps in Pakistan so they could gain the skills necessary to kill Americans in Afghanistan.

Notwithstanding these points, the Court concluded that the defendant's *Rosemond* claim was substantial because Al-Timimi "highlight[ed] competing evidence ... regarding Al-Timimi's knowledge of the use of explosives at the LET camp." (ECF No. 519 at 11–12.) But insofar as the defendant is merely making a sufficiency argument about the quantum of evidence bearing on foreknowledge, he cannot prevail simply by highlighting "competing evidence." Rather, he must show that no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Millender*, — F.3d —, No. 18-4784, 2020 WL 4745571, at *3 (4th Cir. Aug. 17, 2020) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). He has not done so.

Finally, the Court stated in a footnote that the government had not responded to the defendant's arguments based on the First Amendment and the alleged discovery violations underlying his two remands. (ECF No. 519 at 12 n.4.) The First Amendment claim is clearly

8

without merit, as soliciting followers to commit treason by training in terrorist camps and fighting against American troops is not protected speech. *See United States v. Miselis*, — F.3d —, No. 19-4550, 2020 WL 5015072, at *10 n.9 (4th Cir. Aug. 24, 2020) (stating that aiding and abetting criminal conduct is not protected speech); *United States v. Williams*, 553 U.S. 285, 298 (2008) (speech that is "intended to induce or commence illegal activities" is categorically unprotected); *United States v. Rahman*, 189 F.3d 88, 114 (2d Cir. 1999) (speech that "constitutes an agreement to use force against the United States" is not protected). Likewise, the Court has thus far rejected the defendant's discovery claims, so there is no reason to believe those claims constitute an exceptional reason for bail.

The defendant's substantial-question arguments are therefore unlikely to prevail.

### 3. The defendant has not demonstrated that exceptional reasons exist under 18 U.S.C. § 3145(c).

Lastly, the defendant has not demonstrated exceptional circumstances sufficient to justify bail under § 3145(c). The Court identified two exceptional reasons here—the current pandemic and this case's unusual procedural posture. But neither reason is sufficient to justify bail.[3]

In light of the CDC's revised guidance issued on June 25, 2020, the government accepts that, if the defendant were to contract the novel coronavirus, he is potentially at a higher risk of developing COVID-19.[4] But even accepting that the defendant is at increased risk of contracting

---

[3] The Fourth Circuit does not appear to have adopted a standard for reviewing post-verdict release orders under § 3145(c), although it has stated in an unpublished opinion that "[t]he standard of review for pretrial detention orders under 18 U.S.C. § 3145(c) is one of independent review, with 'deference to the determination of the district court.'" *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (quoting *United States v. O'Brien*, 895 F.2d 810, 814 (1st Cir.1990)).

[4] The revised guidance is available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

COVID-19 based on his personal characteristics, there are at least two reasons why that fact, standing alone, is not an "exceptional reason" for bail.

*First*, any danger from COVID-19 at the maximum-security ADX facility is currently notional. To date, no inmates or staffers have tested positive for COVID-19 at ADX Florence, while eight staff members—stationed elsewhere in the complex and not within the ADX facility—have tested positive and recovered.[5] As the Third Circuit has stated in an analogous context, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 596–97 (3d Cir. 2020).

Even if the risk of a coronavirus outbreak at ADX Florence were more than hypothetical, the defendant's release plan actually makes him likelier to contract the disease. The defendant proposes to be released into Washington, DC. (ECF No. 466-2.) But Washington, DC has identified 13,722 instances of coronavirus infection, leading to 605 deaths.[6] Those numbers stand in stark contrast to the zero cases of COVID-19 at ADX Florence. As one magistrate judge has concluded, when there are no cases of COVID-19 at a particular facility, "it would be speculative to say whether [a defendant's] release plan … truly mitigates [his] health risks rather than potentially exacerbating them." *United States v. Duncan*, — F. Supp. 3d —No. 18-cr-40030-1 (HLT), 2020 WL 1700355, at *1 (D. Kan. Apr. 8, 2020).

*Second*, the defendant's argument for exceptional reasons depends on medical conditions

---

[5] The government previously identified five such staffers. Based on information from FCC Florence, it now proffers that the current number is eight, all of whom have recovered. The government is also aware that seven inmates recently tested positive at the medium-security FCI facility, having been transferred from elsewhere. Those inmates are now in quarantine.

[6] *See* Coronavirus Data, Gov't of the District of Columbia, https://coronavirus.dc.gov/page/coronavirus-data (last updated Aug. 25, 2020).

that are fairly common. *Cf. United States v. Grobman*, — F. Supp. 3d —, No. 18-CR-20989 (RKA), 2020 WL 3286309, at *6 (S.D. Fla. Apr. 24, 2020) ("Virtually every person over the age of 50 has some health condition that could conceivably put that person at a greater risk of succumbing to the coronavirus, but this does not entitle every inmate over 50 to be released."). Likewise, his claim of non-dangerousness depends on his lack of a disciplinary record while incarcerated. But if those two factors, standing alone, were sufficient to justify bail, then many of the defendant's fellow inmates at ADX Florence—some of the most dangerous criminals in the United States—should be also be released so long as they have not committed disciplinary infractions while imprisoned. That cannot be correct. *Cf. United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020) ("[T]he existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit.").

The government also believes that the case's unusual procedural posture militates in favor of a stay, not in favor of release on bail. The Court expressed concern that "[s]hould Al-Timimi succeed in having his convictions under Counts 7, 8, 9, and 10 reversed, he would have already served more time in prison than warranted." (ECF No. 519 at 15.) But this case is only in such a posture by virtue of the defendant's own choices. If he had *already* perfected his direct appeal, and if the Fourth Circuit had agreed with his arguments attacking Counts 7–10, then under the current judgment he would have been a free man five years ago. The Court should not countenance a strategy whereby the defendant receives early release from prison by pointing to a legal theory he has been unwilling to defend before the Fourth Circuit on the merits.

*    *    *

For these reasons, the government has a strong likelihood of success on appeal, or, at the

very least, a "substantial case on the merits." *Hilton*, 481 U.S. at 778.

    **B.**    **Factor 3: The Threat of Substantial Injury to Other Parties Interested in the Proceeding**

For the reasons stated above, *see supra* Part A.3, the third factor—the threat of injury to other parties—is either neutral or weighs only marginally in favor of the defendant. While it is true that the defendant has some health conditions that place him at higher risk of developing complications from COVID-19, he has not demonstrated that ADX Florence, in particular, poses such a risk, given the lack of documented cases among prisoners there. In the analogous context of compassionate release courts, have generally required defendants to demonstrate a risk of COVID-19 infection that is particularized at the level of both the individual and the prison facility. *Cf. United States v. White*, — F. Supp. 3d —, No. 2:07-cr-150 (RBS), 2020 WL 1906845, at *1 n.1 (E.D. Va. Apr. 17, 2020) ("Courts in this district 'have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to [COVID-19] and a particularized risk of contracting the disease at his prison facility.'" (quoting *United States v. Feiling*, — F. Supp. 3d —, No. 3:19-cr-112 (DJN), 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020))). The defendant has not done so, especially given the high infection rate in Washington, DC relative to the ADX facility.

    **C.**    **Factors 2 and 4: Irreparable Injury and the Public Interest**

The second and fourth factors—the possibility of irreparable injury to the government and the public interest—also weigh in favor of a stay. As the Fifth Circuit has explained when considering these factors in the habeas context, a defendant's offenses of conviction militate in favor of a stay when those crimes are particularly serious. *See Woodfox v. Cain*, 789 F.3d 565, 572 (5th Cir. 2015) ("[T]here is a substantial interest in staying the release of a person, twice convicted of murder, from being released from a life sentence without the possibility of

parole."). Here, where the jury convicted the defendant of soliciting treason and sending others overseas to train with firearms and explosives to wage war on American soldiers, similar considerations weigh in favor staying the Court's bail order.

The presence of the novel coronavirus does not, in and of itself, upset this calculus. The inquiry is case-specific. As the Sixth Circuit explained in recently staying a bail order entered under § 3145(c):

> [The defendant] suffers from several medical conditions that may render him more vulnerable if he contracts COVID-19. But his facility is taking steps to limit transmission of COVID-19. There are few, if any active cases at the facility. And none of his evidence suggests that his medical conditions are presently so severe that his life is in danger.

*United States, v. McGowan*, No. 20-1617, 2020 WL 3867515, at *4 (6th Cir. July 8, 2020). The same logic applies here.

## Conclusion

On balance, the *Hilton* factors weigh in favor of a stay pending appeal. Therefore, the government requests that the Court stay its bail order pending resolution of this matter "promptly" at the Fourth Circuit under 18 U.S.C. § 3145(c) and Federal Rule of Appellate Procedure 9.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By: _____/s/_____
Daniel T. Young
John T. Gibbs
Gordon D. Kromberg
Assistant United States Attorneys
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Office: (703) 299-3700
Fax: (703) 299-3980
Email: daniel.young@usdoj.gov
john.gibbs@usdoj.gov
gordon.kromberg@usdoj.gov

## Certificate of Service

I certify that on August 26, 2020, I electronically filed a copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

By: _____/s/_____
Daniel T. Young
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Office:  (703) 299-3700
Fax:     (703) 299-3980
Email:   daniel.young@usdoj.gov